IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| GLENN W. RUKLIC and DIANE | ) | |
| RUKLIC, | ) | Case No.  08 B 14012 |
| | ) | |
| Debtors. | ) | Hon. Bruce W. Black |
| | ) | |
| FIRST PERSONAL BANK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| GLENN W. RUKLIC | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST PERSONAL BANK'S ADVERSARY COMPLAINT FOR THE
DETERMINATION OF THE DISCHARGEABILITY OF DEBT**

First Personal Bank, by and through its attorneys, BAUCH & MICHAELS, LLC, complains against Defendant, Glenn W. Ruklic pursuant to § 523(a)(2)(B) of the United States Bankruptcy Code (the "Code") and Bankruptcy Rule 7001(4) for the determination of the dischargeability of a debt and in support thereof states as follows.

**JURISDICTION AND VENUE**

1.    This adversary proceeding arises in the chapter 7 case of the Glenn W. Ruklic and Diane Ruklic (collectively, the "Ruklics" or "Debtors"), case number 08 B 14012, now pending before this Court in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division ("Ruklics' Bankruptcy").

2.    This adversary proceeding arises under Code § 523(a)(2)(B). The United States District Court for the Northern District of Illinois has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This proceeding has been referred to this Bankruptcy Court by Rule 2.33 of the

General Rules of the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. § 157(a).

3.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (I) and (J).

4.    Venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

5.    First Personal Bank ("First Personal") is a creditor of the Ruklics' bankruptcy estate.

6.    Defendant, Glenn W. Ruklic ("Glenn" or "Glenn Ruklic") is a Debtor in the above-captioned bankruptcy case. At all times relevant hereto (2004 to 2007) Glenn W. Ruklic was a shareholder and director and the president of J.P. Ruklic Screw Company ("Ruklic Screw").

## COMMON FACTS

7.    On May 31, 2008, the Debtors filed a voluntary petition for relief under Chapter 7, Title 11 of the United States Code in the United States Bankruptcy Court for the Northern District of Illinois. Thomas B. Sullivan was appointed as the Chapter 7 trustee.

8.    The Debtors' first meeting of creditors took place on August 7, 2008.

### 2005 Loans to Ruklic Screw

9.    During November and December 2004, Glenn represented to First Personal that Ruklic Screw wanted to refinance its existing debts by borrowing approximately $536,500.00 from First Personal.  In connection with its application for this refinancing, Glenn delivered Ruklic Screw's financial statements for its year ended October 31, 2004 ("2004 Financial Statements") to First Personal. A true and accurate copy of the 2004 Financial Statements is attached hereto as EXHIBIT 1. The 2004 Financial Statements valued Ruklic Screw's inventory at $887,372.00.

10.    On January 10, 2005, Ruklic Screw, in consideration of First Personal's establishment of a revolving line of credit of up to $400,000.00, executed and delivered to First Personal a "Universal Promissory Note and Security Agreement" dated January 10, 2005 (the "2005 LOC

Note"). In connection with the 2005 LOC Note, Ruklic Screw granted First Personal a security interest in its inventory. A true and accurate copy of the 2005 LOC Note and related security agreement is attached hereto as EXHIBIT 2.

11.     On or about January 11, 2005, Ruklic Screw, in consideration of First Personal's loan of $136,500.00, executed and delivered to First Personal a "Universal Note and Security Agreement" dated January 11, 2005 (the "2005 Term Note"). In connection with the 2005 Term Note, Ruklic Screw granted First Personal a security interest in its inventory. A true and accurate copy of the 2005 Term Note and related security agreement is attached hereto as EXHIBIT 3.

12.     First Personal reasonably relied on the 2004 Financial Statements, particularly the valuation of Ruklic Screw's inventory, when it lent funds to Ruklic Screw under the 2005 LOC Note and the 2005 Term Note.

**2006 Loan to Ruklic Screw**

13.     During April 2006, Glenn represented to First Personal that Ruklic Screw wanted to borrow approximately $370,100.00 from First Personal.  In connection with Ruklic Screw's application for this refinancing, Glenn delivered Ruklic Screw's financial statements for its year ended October 31, 2005 ("2005 Financial Statements") to First Personal. A copy of the 2005 Financial Statements is attached hereto as EXHIBIT 4. In the 2005 Financial Statement, Ruklic Screw's inventory was valued at $817,398.00.

14.     On or about May 19, 2006, Ruklic Screw, in consideration of First Personal's establishment of a revolving line of credit of up to $370,100.00, executed and delivered to First Personal a "Universal Promissory Note and Security Agreement" dated May 19, 2006 (the "2006 LOC Note"). In connection with the 2006 LOC Note, Ruklic Screw granted First Personal a security interest in its inventory.  A true and accurate copy of the 2006 LOC Note and related security agreement is attached hereto as EXHIBIT 5.

15.     First Personal reasonably relied on the 2005 Financial Statements, particularly the valuation of Ruklic Screw's inventory, when it lent funds to Ruklic Screw under the 2006 LOC Note.

**Glenn's Guaranties of Ruklic Screw's Indebtedness**

16.     On or about January 10, 2005, Glenn executed and delivered to First Personal a guaranty for the entire amount of indebtedness due according to the terms of the 2005 LOC Note and the 2005 Term Note (the "2005 Guaranty"). A true and accurate copy of the 2005 Guaranty is attached hereto as EXHIBIT 6.

17.     On or about May 19, 2006, Glenn executed and delivered to First Personal a guaranty for the entire amount of indebtedness due according to the terms of the 2006 LOC Promissory Note (the "2006 Guaranty").  A true and accurate copy of the 2006 Guaranty is attached hereto as EXHIBIT 7.

**The 2007 Forbearance and Extensions of the Maturity Dates of the Notes**

18.     During the last quarter of 2006, Ruklic Screw, through its president, Glenn, sought to extend the maturity dates of the 2005 LOC Note ($400,000), which had matured on January 10, 2006, and the 2006 LOC Note ($370,100), which was set to mature on December 15, 2006. On October 19, 2006, in connection with seeking the extensions of the 2005 LOC Note and 2006 LOC Note, Glenn delivered a personal financial statement to First Personal ("Glenn's 2006 Financial Statement"). A true and accurate copy of Glenn's 2006 Financial Statement is attached hereto as EXHIBIT 8. Glenn's 2006 Financial Statement stated that he owned a $245,000 interest in a profit sharing trust. On February 1, 2007, in reliance on the representations in Glenn's 2006 Financial Statement, First Personal elected to forbear collection actions on the 2005 Term Note and extend the maturity dates of the 2005 LOC Note and the 2006 LOC Note to January 31, 2008, despite the fact that all of these loans were in default. After receiving the extension of the maturity dates, Ruklic

4

Screw failed to make any further payments to First Personal due pursuant to the 2005 LOC Note and the 2006 LOC Note.

19.     During 2003, Glenn and his siblings had each owned substantial interests in the J.P. Ruklic Screw Company Profit-Sharing Trust. In 2005, however, Glenn's entire interest in the J.P. Ruklic Screw Company Profit-Sharing Trust was distributed and invested back into the Ruklic Screw company, in an attempt to keep the business operating.   Thus, Glenn's 2006 Financial Statement was materially false, because it represented that Glenn owned a $245,000 interest in the profit sharing trust, when in fact, his interest in the trust was $0.

**Ruklic Screw's Default Under the Notes**

20.     Ruklic Screw failed to make its payments under the 2005 LOC Note, 2005 Term Note, and 2006 LOC Note. First Personal accelerated the 2005 LOC Note, 2005 Term Note, and 2006 LOC Note on May 11, 2007.

21.     Under the 2005 LOC Promissory Note, the principal amount of $321,667.12, along with all accrued interest and late fees, and collection costs, including attorneys' fees, are due and owing.

22.     Under the 2005 Term Promissory Note, the principal amount of $116,473.13, along with all accrued interest and late fees, and collection costs, including attorneys' fees, are due and owing.

23.     Under the 2006 Promissory Note, the principal amount of $274,430.95, along with all accrued interest and late fees, and collection costs, including attorneys' fees, are due and owing.

**Disposition of the Inventory**

24.     On May 11, 2007, after it was clear that Ruklic Screw could not continue to operate and meet its obligations to its creditors, Ruklic Screw transferred all of its assets through an

assignment for the benefit of creditors to Gregg Szilagyi, as trustee and assignee for the benefit of creditors. Prior to this assignment, Glenn had been diligently trying to sell the inventory.

25.     On June 4, 2007, Gregg Szilagyi (the trustee and assignee for the benefit of creditors) conducted an advertised public sale of all of Ruklic Screw's assets, which were comprised of inventory, accounts receivable, machinery and equipment, customer lists, pre-paid expenses, websites, trade names and trademarks, and general intangibles (the "Ruklic Screw Assets"). At the sale, First Personal, the sole bidder, credit bid $225,000.00 for the Ruklic Screw Assets. There were no other bids for any of the assets. On June 19, 2007, First Personal sold the Ruklic Screw Assets to Cleco Industrial Fasteners, Inc. ("Purchaser"), a former competitor of Ruklic Screw and Glenn Ruklic's current employer, for $150,000.00.  Only $34,897.00 of the purchase price was allocated to the inventory, because after inspecting the inventory, the Purchaser determined that the inventory was only worth its scrap value.

26.     When Glenn delivered Ruklic Screw's 2004 and 2005 Financial Statements to First Personal, he knew that a substantial portion of Ruklic Screw's inventory was acquired at the scrap value of two cents per pound. Yet, in its 2004 and 2005 Financial Statements, Ruklic Screw valued the inventory at its supposed market value of over $800,000. At the time that Glenn delivered Ruklic Screw's 2004 and 2005 Financial Statements to First Personal, he believed Ruklic Screw's inventory was only worth 50% of its stated value. As it turns out, the inventory was worth less than 5% of its stated value.

27.     On August 3, 2007, First Personal filed an action against Glenn, Ruklic Screw, and other persons who guaranteed Ruklic Screw's indebtedness to First Personal, Case No. 07 CH 20805, in the Circuit Court of Cook County (the "Action"). First Personal is seeking, *inter alia*, to recover the amounts owed by Glenn pursuant to the 2005 and 2006 Guaranties.

### Count I – 11 U.S.C. § 523(a)(2)(B) – Ruklic Screw's Financial Statements

28.     First Personal repeats and realleges paragraph 1-27 of the Complaint as if stated fully herein.

29.     11 U.S.C. § 523(a)(2)(B) provides in pertinent part that:

> A discharge under section 727, 1147, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by… use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

30.     The 2004 Financial Statements and 2005 Financial Statements were writings respecting Ruklic Screw's financial condition used by Glenn.

31.     Ruklic Screw is an insider of Glenn.

32.     The 2004 Financial Statements and 2005 Financial Statements were materially false when Glenn delivered them to First Personal.

33.     Glenn knew that the 2004 Financial Statements and 2005 Financial Statements were materially false when he delivered them to First Personal.

34.     Glenn delivered the 2004 Financial Statements and 2005 Financial Statements to First Personal with the intent to deceive First Personal and induce First Personal to lend funds to Ruklic Screw.

35.     First Personal reasonably relied upon the 2004 Financial Statements and 2005 Financial Statements and said reliance caused First Personal severe harm and loss.

36.     By reason of the foregoing, Glenn's 2005 Guaranty and 2006 Guaranty of Ruklic Screw's indebtedness to First Personal, which indebtedness was obtained by Glenn's delivery of the materially false 2004 Financial Statements and 2005 Financial Statements, should be excepted from discharge under Section 523 of the United States Bankruptcy Code.

7

*WHEREFORE,* First Personal Bank prays that this Court enter an order:

(i)   Determining that Glenn Ruklic's debts pursuant to his guaranties of obligations of an amount not less than $712,571.20, plus accrued interest, attorneys fees, and costs are not dischargeable pursuant to 523(a)(2)B) of the Bankruptcy Code; and,

(ii)   Granting such further relief as the Court deems appropriate.

### Count II – 11 U.S.C. § 523(a)(2)(B) – Glenn's 2006 Financial Statements

37.   First Personal repeats and realleges paragraph 1-36 of the Complaint as if stated fully herein.

38.   Glenn's 2006 Financial Statement was a writing respecting his financial condition.

39.   Glenn's 2006 Financial Statement was materially false when Glenn delivered it to First Personal.

40.   Glenn knew that Glenn's 2006 Financial Statement was materially false when he delivered it to First Personal.

41.   Glenn delivered his 2006 Financial Statement to First Personal with the intent to deceive First Personal and induce First Personal to forbear collection actions on the 2005 Term Note ($136,000) and extend the maturity dates on the 2005 LOC Note ($400,000) and the 2006 LOC Note ($370,100).

42.   First Personal reasonably relied upon Glenn's 2006 Financial Statement when it elected to forbear collection actions on the 2005 Term Note, the 2005 LOC Note and the 2006 LOC Note. First Personal reasonably relied upon Glenn's 2006 Financial Statement when it elected to extend the maturity dates of the 2005 LOC Note and the 2006 LOC Note. First Personal's reliance upon Glenn's 2006 Financial Statement caused First Personal severe harm and loss.

43.     Glenn personally guarantied the indebtedness that Ruklic Screw owed to First Personal pursuant to the 2005 Term Note, the 2005 LOC Note and the 2006 LOC Note.  First Personal forbore collection proceedings on these loans based in reliance on Glenn's delivery of his materially false 2006 Financial Statement. Therefore, Glenn's personal indebtedness arising under his 2005 and 2006 Guaranties should be excepted from discharge under Section 523 of the United States Bankruptcy Code.

WHEREFORE, First Personal Bank prays that this Court enter an order:

(iii)   Determining that Glenn Ruklic's debts pursuant to his guaranties of obligations of an amount not less than $712,571.20, plus accrued interest, attorneys fees, and costs are not dischargeable pursuant to 523(a)(2)B) of the Bankruptcy Code; and,

(iv)   Granting such further relief as the Court deems appropriate.

Dated: August 29, 2008.                                    FIRST PERSONAL BANK

                                                           By:____/s/ Luke J. Hinkle_____
                                                                One of Its Attorneys

Paul M. Bauch (ARDC # 6196619)
Kenneth A. Michaels Jr. (ARDC #6185885)
Carolina Y. Sales (ARDC #6287277)
Luke J. Hinkle (ARDC #6294323)
BAUCH & MICHAELS, LLC
53 W. Jackson Blvd., Suite 1115
Chicago, Illinois 60604
Office: (312) 588-5000
Fax: (312) 427-5709